# UNITED STATES DISTRICT COURT
for the
Northern District of Texas

| | | |
|---|---|---|
| ERIKA RASCON<br>*Plaintiff,*<br><br>-v-<br><br>ROCKWALL COUNTY, TEXAS;<br>DEPUTY JEFFREY WALLS, in his individual capacity; CITY OF WYLIE;<br>JOHN/JANE DOE DEPUTIES 1–5, in their individual capacities; and JOHN/JANE DOE WYLIE POLICE OFFICERS 1–5,in their individual capacities,<br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:26-cv-03216-L |

**PLAINTIFF ERIKA RASCON'S RESPONSE IN OPPOSITION TO DEFENDANT ROCKWALL COUNTY'S MOTION TO DISMISS**

COMES NOW, PLAINTIFF ERIKA RASCON, and hereby makes this RESPONSE IN OPPOSITION TO DEFENDANT ROCKWALL COUNTY'S MOTION TO DISMISS, and in support thereof offers the following:

## 1. Introduction

Rockwall County defendants' approach is to cavalierly dismiss the realities of this case and assert that Deputy Walls, Deputy Williams and Deputy Mejia coordinated to provide timely relief from injurious handcuffs and provided medical help as needed. In fact, as the Body Cam Timestamps show, Rockwall County seriously mischaracterizes evidence and does not negate Plaintiff's allegations made in factual detail with body cam references.

Significantly, Erica Rascon was no threat and was completely cooperative. There was no reasonable suspicion to handcuff her. She appeared at the top of the stairs obviously medically impaired by a chest port with a serious condition. Walls 14:53:16. Deputy Walls did not begin to question her about her medical condition that she announced immediately as congestive heart failure with a port device in her fanny bag, but he rushed her and cuffed her in back as soon as she got down stairs. Walls 14:53:18. Then he walked her over to the chicken coup bench in an unclean environment bc she asked to get out of the sun. She told him immediately before he put on cuffs that she had congestive heart failure. Walls 14:53:16. He could have questioned her but he cuffed her then explained by yelling to she and Micah handcuffed at the other end of the lot what was going on and then interviewed them. She said that she was only a visitor. He then front cuffed her. Walls 14:56:07.

As Plaintiff was an obvious medically disabled person, no threat and cooperative, with no showing of guns, there was no reasonable suspicion or legal pat down available. **In re A.T.H. 106 S.W. 3d 338 (Tex. App Austin 2003)** In the context of a "Terry frisk" (protective pat-down), the court found a search unconstitutional because there were no specific facts showing the suspect was armed or dangerous. Compliant, non-threatening behavior defeats an officer's generalized hunch regarding a safety risk. Such is the case here where

Plaintiff did exactly as asked, answered him yes sir confirming her attention apparently unarmed and did not raise her voice.

Plaintiff can back up its account with body cam references, the references for Rockwall County's recount are given next with important supplementation. Further, Rockwall County's attempt to negate Plaintiff's account is mischaracterized, such as the key statement that when Ms. Rascon first "began" to express pain Deputy Walls summonsed the EMS. Rather, the bodycam shows that he repeatedly told the other officers and landowners that Ms. Rascon is complaining of pain and is paranoid, that she is freaking out and can barely walk." Walls 15:31:13 told to his lieutenant and to Officer Mejia, Mejia 15:03:16. She expressed pain and injury several times from the beginning. Walls 14:55:14; Mejia 15:5:34. Williams 15:13:12 Thus, he had knowledge of her pain and injury and chose to ignore her, Williams 15:10:17, made fun of her instead of question her as to her symptoms and kept her cuffed or asking for medical care, admitting to her that she was "not under arrest, but being detained. She could leave at any time but she was being detained." Williams 15:14:25. 15:18:03.

Plaintiff alleges that "while Williams commented to Mejia 'cuff still on" Williams 15:18:03 outside of Walls' hearing, neither said anything to Walls until Micah pled for removal of cuffs. Williams 15:21:55:15:26:47. Amended Complaint p. 13 para. 46 (Count 1)

This amounts to unlawful detainment, negligence or excessive force, breach of ADA and a 504 violation and plaintiff has plead in the alternative. See Plaintiff's Opposition to Rockwall County and City of Wylie Qualified immunity does not knock out either the negligence or excessive force claims at this stage.

Plaintiff Rascon's serious medical condition was open and apparent from plain view. Her implantable central venous port/central line is placed under the skin of her chest and connects to a catheter that enters a large vein, providing the central IV access needed for her continuous Remodulin therapy. Her CADD-Solis infusion pump continuously delivers the medication through this port so the port, catheter, tubing and pump work together as one medication delivery system. The medication cannot simply be stopped without potentially serious medical consequences. Before she was detained, she explicitly explained to officer Walls that she had a medical pump attached to her. Walls 14:53:16. Plaintiff and took it out of the bag and showed it to him and put away immediately. Walls 15:00:15 Deputy Walls was aware of the medical equipment before the handcuff. Before the June 16, 2025 incidence she had no problems with port but after being placed in rear handcuffs and detained for an extended period, she experienced selling and pain around the site, followed by drainage/pus and infection. She was detained outdoors in a nonsterile site while dependent on the central access.

Her right-sided port was ultimately removed on September 4, 2025 and a new left sided port placed September 8, 2025 because of the infections and complications caused by the rear handcuffing followed by front handcuffing for an extended period , over an hour as admits defendant cite p.15 Defendants Motion to Dismiss. Reasonable suspicion never existed or expired after only a few minutes of search and questioning. **In re A.T.H.** 106 S.W. 3d 338 (Tex. App Austin 2003**)** In **United States v. Jones,** 234 F. 3d 234, 240-242 (5th Cir. 2000) the Fifth Circuit held that officers unlawfully continued a traffic detention after its original purpose had been completed and no independent reasonable suspicion supported further detention.

The back handcuff dislodged the port and the extended front cuff of over an hour exerted pressure and pull on Plaintiffs infusion pump and tubing. Several times they asked Walls to remove her cuffs but he would ignore and do something else and Walls then declined going inside the building during Plaintiff's treatment as a mask was required to provide a sterile environment due to central port line. Williams 15:49:47 Mejia uncuffed Plaintiff as she went inside and Walls was out of view. Williams 15:30:25.

Walls much earlier had no further reason for reasonable suspicion or probable cause to sustain cuffing as his lieutenant told him to information report it to them no cite for criminal trespassing because of the three years Micah Ray had been on the property gives him civil law grounds for disputing ownership and to tell landowners out of earshot to bring eviction

proceeding. Walls 15:33:32 to 15:35:38. Walls wanted to secure and search property for the landowners and left Plaintiff cuffed with two armed officers watching her outside while she was no threat and incapable of running. Walls said the inside was too crowded to sit inside. Officers had no reasonable suspicion or probable cause to detain Plaintiff and it was an unlawful seizure with deliberate indifference to obvious, serious medical need of Plaintiff and denied Plaintiff benefits and accommodations because of her disability as the officers kept Plaintiff outside and cuffed with disruption to her port line. Officers exercised negligence or intentional tort in their nonchalance and extended detainment to prep the landowners property for putting on the real estate market within a matter of days to weeks by searching through all of the interior while Plaintiff was cuffed outside.

While the lead EMS of Wylie observed and aided Plaintiff with supplies, the lead EMS officer was not allowed to touch her central port and she told him this upon arrival and that she thought it had shifted. Williams 15:28:11 - 17. The Wylie EMS only did an ekg and took Plaintiff's blood pressure while on site.

Plaintiff rebandaged herself for the most part inside in the medically clean environment and EMS did rendered a minimal amount of aid except for monitoring. Mejia video cam video at 15:28 to 16:01:10. Plaintiff sought her own doctor's care and called his office. Mejia 15:45:39 and had four hours to reach his hospital. She therefore declined to go to the hospital since it would not be her doctor. Mejia 15:59:39.

The indisputable facts show that Plaintiff endured a serious medical condition that required attention from the officers when she expressed pain and injury, but Walls primarily replied over an hour with comments that Plaintiff was “paranoid” and that she was “freaking out”. Yet Plaintiff was no threat and completely cooperative there was as a matter of law no basis for reasonable suspicion, or if her presence in the building there was an allegedly broken gun lying around which otherwise the building was found clean, reasonable suspicion evaporated and Walls was obliged to uncuff Plaintiff in her circumstances as she was no threat nor the subject of arrest. By not doing so and Plaintiff sustaining damages causally linked he is liable on several grounds the subject of this lawsuit. By their inaction and relying only on Walls to make decision as it was “his show”, Deputies Williams and Mejia failed to intervene to protect a bystander.

### 2. Negligence Claim Benefits from Immunity Waiver as to Defendants

Federal claims are treated separately and Defendant wrongfully conflates the pleadings of the negligence and excessive force under 42 USC 1983.[1] A federal plaintiff can bring both a Texas Tort Claims Act (TTCA) claim for negligent use of handcuffs and a federal Fourth Amendment excessive-force claim under § 1983, as these causes of action are legally distinct and not procedurally mutually exclusive at the pleading stage.[2]

---

[1] *Peter Klassen v. Gaines County, Texas and Gaines County Deputy Sheriffs Ken Ketron and Clint Lowe,* No. 11-19-00266-CV, in the Texas Eleventh Court of Appeals, appeal filed August 23, 2019 judyrecords.com Trial court: 106th District Court, Gaines County, Texas, Cause No. 19-08-18199, Hon. Cecil G. Puryear, presiding.juryrecords.com
[2] Id.

Federal procedure allows pleading alternative or inconsistent theories, so plaintiffs may allege both § 1983 excessive force and TTCA negligent use in separate counts, and they are not combined into one count to avoid confusion over defendants and liability standards.

Further, not all handcuffing is treated equally, as Defendants presume by their general reference to handcuffing as the basis of both negligence and excessive force claims.  While intentional torts are excepted from the waiver of immunity given to use of tangible property in injury to another, the negligent use of handcuffs as such property is a substantial standard and gives room to Plaintiff alleging both negligence and excessive force successfully in the alternative.

Under both *Scott* and *Guevara* negligence in the use of handcuffs was sustained as proper allegation that prevented the intentional tort conversion of negligence merely because of the use of handcuffs.  Facts were distinguished by which plaintiffs can proceed within the waiver of governmental immunity.

In *Guevara*, the plaintiff alleged that a city police officer negligently injured him while handcuffing him. The pleadings alleged that the officer "overreacted," attempted to expedite handcuffing, failed to act reasonably and prudently, and disregarded the plaintiff's pleas of pain. The court recognized the plaintiff's claim as one brought under TTCA § 101.021(2), the waiver for personal injury caused by the condition or use of tangible

personal property. The opinion explains that a governmental unit may be liable for negligent use of tangible property if the employee would be personally liable.[3]

In Plaintiff's Complaint Dkt. 1, pp 5-6, paragraphs 19-23 (negligence) and pp. 11-12 paragraphs 41-53 (excessive force), Plaintiff alleges that defendant Walls and other officers heard her warnings about her hip attached implanted medical device and placement of handcuffs, nonetheless with knowledge handled her roughly, rear handcuffed her which put dangerous pressure on the device, triggered alerts, and still left her for an unreasonable substantial amount of time without adjusting the handcuffs. Plaintiff further alleged in Dkt. p.16, paragraph 75 that defendants maintained the restraints in a way that caused the port line to become dislodged, contaminated and infected, resulting in hospitalization and interruption of life-sustaining cardiac therapy. *Guevara* as well as *Gordon* invite the analysis of negligence as sufficient with multiple factors in action to create the significant injury at hand.[4]

**3. 4th Amendment Injury More Than De Minimis**

**Reasonable Suspicion Falls to Cooperative Lack of Threat**

As Plaintiff was an obvious medically disabled person, no threat and cooperative, with no showing of guns, there was no reasonable suspicion or legal pat down available. **In re**

---

[3] *City of Beverly Hills v. Guevara*, No. 10-94-203-CV, 911 S.W.2d 901 (Tex. App.—Waco Dec. 13, 1995). Related Texas Supreme Court interlocutory-appeal decision: *City of Beverly Hills v. Guevara*, 904 S.W.2d 655 (Tex. 1995). The Waco court's remand opinion analyzed a negligent handcuffing injury claim under the TTCA and official- immunity framework.

[4] *City of Watauga v. Gordon*, 389 S.W. 3d 604 (Tex. App. – Ft. Worth 2012), rev'd, 434 S..W. 3d 586 (Tex 2014.)

**A.T.H. 106 S.W. 3d 338 (Tex. App Austin 2003)** In the context of a “Terry frisk” (protective pat-down), the court found a search unconstitutional because there were no specific facts showing the suspect was armed or dangerous. Compliant, non-threatening behavior defeats an officer’s generalized hunch regarding a safety risk. Such is the case here where Plaintiff did exactly as asked, answered him yes sir confirming her attention apparently unarmed and did not raise her voice.

**Application to a Dislodged Cardiac/Infusion Port Line**

To state a 4th Amendment excessive force claim, plaintiff plead facts that (1) Plaintiff established a physical injury (2) which resulted directly and only from a use of force that was clearly excessive to the need; and (3) the excessiveness of the force employed was objectively unreasonable.[5]

A handcuffing allegation involving a cardio-therapy port line or waistline medical device that was dislodged or broken by the placement and tightening of restraints, followed by contamination, infection and intravenous antibiotics, is materially different from an ordinary “tight handcuffs caused wrist pain” case.

Those facts, if pleaded with sufficient detail, should ordinarily satisfy the **more-than-de-minus injury** requirement at Rule 12(b)(6). The alleged injuries are objective and medically significant:

[5] *Solis v. Serrett*, 31 F. 4th 975,981 (5th Cir 2022) *Trammell vs. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017)

- physical displacement of a medical line or port connection;
- breakage of the line or device;
- contamination of an internal or semi-internal access system;
- infection;
- need for IV antibiotics;
- likely medical evaluation, treatment, replacement, or monitoring.

That is not merely pain or temporary discomfort. It is a medically consequential injury involving a therapeutic device and infectious complications.

Compelling is the analogous Fifth Circuit/Texas federal authority holding that medically documented, non-trivial injury satisfies the injury element, while distinguishing the ordinary tight-handcuff cases where only transient pain, bruising, or redness was alleged.[6] In *Ramirez*, the Fifth Circuit reversed summary judgment on a Fourth Amendment excessive-force claim. The court reiterated that a plaintiff must show an injury that resulted directly and only from force that was clearly excessive and clearly unreasonable, and it held that the plaintiff's alleged taser-related injuries were sufficient to satisfy the injury requirement. Although *Ramirez* is not a port-line or handcuff-medical-device case, it is useful because it confirms that physical injuries requiring medical attention and resulting from force can clear the more-than-de-minimis threshold. Additional strong support for greater than de minimis is *Bush v. Strain*, 513 F.3d 492, 500–02 5th Cir. 2008. *Bush* is not a Texas case, but it is binding Fifth Circuit authority. The

[6] *Ramirez v. Martinez*, 716 F.3d 369, 377–78 5th Cir. 2013.

plaintiff alleged that an officer forcefully slammed her face into a vehicle after she was restrained, causing injury. The Fifth Circuit held the injury was sufficient and allowed the excessive-force claim to proceed. It is useful for the proposition that objectively verifiable injury caused by gratuitous or unreasonable force is not de minimis.

Plaintiff's Complaint Dkt 1, pp. 5-7, paragraphs 21 thru 29 show the factual detail of the officers' deliberate ignoring of Plaintiff's warnings regarding her medical device and condition; ignored device alerts caused by pressure on the unit by handcuffs as well as the dislodgement and contamination of the device and deteriorating condition of Plaintiff requiring medical care, as well as failure of officers to intervene or take alternate steps to ameliorate the situation. As Plaintiff's injuries pass the de minimis threshold Defendants' argument fails as to excessive force claim, as well as to the failure to intervene claim as there existed substantial medical condition to address and thus a violation of a clearly established constitutional right. Plaintiff Complaint Dkt.1, p. 11 paras. 50 and 51 adequately allege violation of a clearly established constitutional right thus preventing limited immunity for individual defendants in the 42 USC 1983 4th amendment claim. The handcuffing of Plaintiff for well over an hour was objectively unreasonable given her obvious and deteriorating medical condition.[7]

**4. Plaintiff's Fourteenth Amendment Claim**

[7] *Solis v. Serrett*, 31 F. 4th 975,981 (5th Cir 2022) Trammell vs. Fruge, 868 F.3d 332, 340 (5th Cir. 2017)

The details have been laid out and plead for a violation of Plaintiff's 14th Amendment right from delay or denial of being provided medical care. Telling as to Deputy Wall's disregarding the substantial risk of serious body harm is his rushing Plaintiff to back cuff without investigation of her known heart congestive failure and on body pump; his leaving her in cuffs with the serious risk of dislodging the port due to weight and front or back placement of cuffs, and his avoidance of awareness of the medical care given by declining to enter the building while Plaintiff was seeking medical care and rebandaged her own site with the monitoring assistance of Wylie EMS. Williams 15:49:47

**No—"deliberate indifference" does not generally mean a subjective intent to cause harm.** It concerns disregard of a substantial risk of serious harm. Under the subjective test, an official must actually recognize the risk and disregard it; the plaintiff need not prove the official wanted the detainee injured. Awareness may be inferred from an obvious risk. Farmer v. Brennan, 511 U.S. 825, 835–43 (1994).

**Taking some steps is not an automatic defense.** The question is whether the official's response to the *known risk* was reasonable. An official who responds reasonably may avoid liability even if harm occurs, but a partial response that leaves the serious risk unaddressed is not necessarily reasonable. Farmer, 511 U.S. at 844–45. Rebandaging her port site without adequate attention to the port line site condition and its readjustment could easily be unreasonable here and is a question for the trier of fact.

## 5. Plaintiff's ADA and 504 Claims

Plaintiff adequately alleges such claims in Dkt. 18 pp.16-18, at paras. 59-72 with factual specificity. Walls created a discovery window on behalf of the homeowners to search the property and building at the expense of Plaintiff's health, while she underwent injury to her port line, endured ongoing pressure and movement to the tubing and pump position from the weight and movement of the cuffs and cuffed arms. Plaintiff warned them from the very beginning that she had congestive heart failure and wore medical equipment that delivered life-saving infusion therapy. The overextended search and failure to uncuff Plaintiff keeping her in an unclean environment constituted discrimination by officers Walls, Williams and Mejia, whom each received Plaintiff's announcement of her condition, her ongoing complaints and outcries, and their each individual avoidance of her due to her disability and failure to provide adequate accommodations due her. She could have been led inside and guarded uncuffed the entire time, but Walls walked to and fro as if he were orchestrating the moveout of the property and house sale, overreaching the scope of any criminal trespass investigation, which ended early into it by the Lieutenant who told him that it was a civil matter and to release them with an information and report.

## 6. Body Cam Videos

Body cam segments are in dispute and are recounted differently with additional aspects ambiguous in interpretation such as plaintiff's treatment which occurs across the room in dark light and with two obstructing bodies blocking any individual hand movement for a short period of time. Mejia 15:31:51 – 15:34:24. Plaintiff as stated called her doctor, whose nurse told her to put substance over the area and rebandage rather than try to readjust the port line which had moved and instructed her to come in for the readjustment. Plaintiff stated it was hard to breathe but was not offered oxygen. The Wylie EMS only did an ekg and took Plaintiff's blood pressure while on site as well as monitored several minutes of rebandaging and asked her questions over the events of the day.

Plaintiff's claims should not be dismissed based on body cam footage as shown below and in the account provided by Plaintiff in this Opposition.

**Body-camera footage is not automatically decisive on a defendant's Rule 12(b)(6) motion.** In a Texas federal court, well-pleaded facts and reasonable inferences ordinarily favor the plaintiff. If video is properly before the court, it can displace an allegation only where it **blatantly contradicts** that allegation—not merely because the defendant offers a different interpretation.[8]

Useful distinctions for our facts are:

- **Obstructed or incomplete footage.** In *Crane*, the Fifth Circuit held that video which did not show what happened inside a car could not settle competing accounts of the crucial event. Ambiguous or incomplete video does not trigger the exception allowing a court to reject the

[8] *Harmon v. City of Arlington*, 16 F.4th 1159, 1162–63 (5th Cir. 2021); *Perdomo v. City of League City*, 163 F.4th 921 (5th Cir. 2026)

plaintiff's account.[9]. In *Darden*, helmet-camera footage missed part of the encounter and a couch obscured another part; it could not resolve whether the plaintiff complied or resisted.[10]

- **Competing interpretations of visible conduct.** In *Spiller*, the Fifth Circuit declined to treat body-camera footage as conclusive where it did not completely refute the plaintiff's account; the dispute about what the plaintiff's elbow movement meant remained for a jury.[11]

### 7. Plaintiff Adequately Pleads Rockwall County's Liability under 1983

Plaintiff relies upon single decision by final policymaker and single incident failure to train to bring Defendant Rockwall under Monell liability through directive of the Lieutenant Chris Mitchell who was working with police chief on the investigation.[12] Plaintiff alleges this in the Amended Complaint Dkt. pp. 9-10 paras 34-35 as Plaintiff has inquired of the Lieutenant as to the investigation of her complaint and he has replied that the chief investigated and found no wrongful seizure. The Police Chief had set this early cuff policy already, with Rascon's case falling in its wake and the Lieutenant warning Deputy Walls not to further detain them as it was a civil matter and no longer a criminal trespass matter, and that further with Plaintiff's serious condition she would need a hospital if walked much but a jail would not take her with her condition on any misdemeanor. Walls 15:31:13.

---

[9] *Crane v. City of Arlington*, 50 F.4th 453, 461–62 (5th Cir. 2022)
[10] *Darden v. City of Fort Worth*, 880 F.3d 722, 729–30 (5th Cir. 2018).

[11] *Spiller v. Harris County*, 113 F.4th 573, 576–78 (5th Cir. 2024).

[12] *Pembour v. City of Cincinnati* 475 U.S. 469, 480-81 (1986)

**1.Single Decision by a Final Policymaker**

Under ***Pembaur v. City of Cincinnati,***[13] a municipality may be liable for one decision when:

1. the decision was made by an official possessing **final policymaking authority** over the relevant subject;
2. the official deliberately selected the challenged course of action;
3. the decision constituted municipal policy under applicable state law; and
4. the decision was the moving force behind the constitutional violation.

This is not strictly an "exception" to *Monell*. The single act itself is treated as official municipal policy because it was adopted or undertaken by the municipality's authorized final policymaker. The Fifth Circuit recognizes that a single decision can qualify in the rare circumstance where the relevant final policymaker performed or directed the specific act underlying the § 1983 claim.

Here, the Lieutenant on the radio was the policymaker who ratified Deputy Walls plans to keep them handcuffed outside the building despite Plaintiff's complaints and being "paranoid and freaking out, acting as though she can barely walk." Given the *Terry Test* the failure in training on heart failure and cardio devices risk of contamination in the process of questioning and detention, including handcuffing, is completely lacking from

[13] *Pembour v. City of Cincinnati* 475 U.S. 469, 480-81 (1986)

their training and must be developed by a legal and medical professional to ensure compliance with existing law. The Lieutenant adopted the absence of such training, did not mention it and accepted its lack. Plaintiff requests leave of court to make sufficient amendments that give the factual basis available with this legal stance.

**2. Single-Incident Failure to Train**

A different and substantially narrower doctrine applies when a claimant alleges that one constitutional injury itself demonstrates an obviously inadequate municipal training policy. This theory derives from ***City of Canton v. Harris*,**[14] and ***Board of County Commissioners v. Brown*.**[15]

Ordinarily, failure-to-train liability requires a pattern of similar constitutional violations establishing deliberate indifference. The narrow single-incident route applies only when:

- the need for particular training was so obvious;
- the inadequacy was highly predictable to result in the specific constitutional violation; and
- the lack of training was closely connected to the injury.

[14] *City of Canton v. Harris*, 489 U.S. 378, 390 & n.10 (1989)

[15] *Board of County Commissioners v. Brown*, 520 U.S. 397, 409–10 (1997).

The Fifth Circuit applies this route sparingly. However, it applies in this case as the cardio device with infusion line and port on Plaintiff's chest was a significant presence calling for particular attention and manner of interaction to maintain its system integrity and the person's health. Handcuffing, front or rear, may not be eligible, while an escort cuff on one arm may be an acceptable means of preserving safety during questioning. Safety was not at issue. The inadequacy was highly predictable to the result of the device dislodgment and contamination of the port sight. Deputies Williams and Mejia questioned the use of handcuffs to each other but did not intervene with Deputy Walls. Plaintiff requests leave to further amend her complaint with timestamped indicators of these events to present.

The single incident exception to Monell applies and the County of Rockwall is guilty as alleged in the Complaint Dkt.1 p. 18 Count VIII Failure to Intervene and Dkt.1 p. 20, Count VII Monell Liability under 42 USC 1983.

**8. Failure to Intervene by Defendants Walls, Williams and Mejia**

Plaintiff has alleged how each defendant was present for the ongoing handcuffed condition of Plaintiff and her ongoing outcries of pain. Further, Williams and Mejia both commented on the continuing presence of cuffs outside the presence of Walls, but took his lead as it was "his show", rather than take initiative to end the violation of wrongful seizure and detainment and use of excessive force. They were not merely in the vicinity of the violation but took part in Walls plans to keep her handcuffed and an ongoing ten pace or less distance from Plaintiff

thus enforcing a tight rein on her handcuffed wrongful detainment. Any initial reasonable suspicion as trespassers gave way to unarmed visitor with someone with a civil dispute (as directed by the lieutenant) on the property who was ultimately given an informational report instead of a criminal trespass warning after almost two hours of wrongful detention to search and talk with the landowners. EMS could have left after the ekg and blood pressure but failed to also make an independent inquiry into Plaintiff's condition or the lead Wylie EMS wrote a diagnostic phrase in his notebook of a serious condition which he did not explain to Plaintiff nor make any advice as to treatment, and refused to give her oxygen for trouble breathing. Plaintiff encountered eight infections before movement of her port to the heart side of the chest. The damage done had long term complications and medically significant consequences. The failure by officers Walls, Williams, Mejia and the lead EMS were the sources of this medical injury and decline. Plaintiff requests leave to amend the complaint to submit further acts and omissions by these parties.

**9.No Qualified Immunity for Defendants**

Deputies handcuffed a Texas woman who was not the subject of their warrant and put her in a patrol car. On her version of the facts—including a 30–45-minute restraint—the Fifth Circuit treated the seizure as an arrest and **affirmed denial of qualified immunity on her unlawful-arrest claim** because no reasonable officer could have believed there was

probable cause. The court noted her asserted heart condition, but **rejected her separate excessive-force claim** based on tight cuffs, bruising, and time in the car.[16]

To get past qualified immunity on an individual officer's damages claim under 42 U.S.C. § 1983, the woman must show **(1) a violation of her own federal right and (2) that, given the facts known to that officer at the time, the violation was clearly established such that the officer's conduct was objectively unreasonable.**

As Plaintiff was an obvious medically disabled person wearing an infusion pump with iv tubing and port line, no threat and cooperative, with no showing of guns, there was no reasonable suspicion or legal pat down available. **In re A.T.H. 106 S.W. 3d 338 (Tex. App Austin 2003)** In the context of a "Terry frisk" (protective pat-down), the court found a search unconstitutional because there were no specific facts showing the suspect was armed or dangerous. Compliant, non-threatening behavior defeats an officer's generalized hunch regarding a safety risk. Such is the case here where Plaintiff did exactly as asked, answered him yes sir confirming her attention apparently unarmed and did not raise her voice nor hands at him.

---

[16] *Freeman v. Gore*, 483 F.3d 404, 408–17 (5th Cir. 2007).

Her 4th amendment right against wrongful detention/seizure was violated and based on the facts defendant knew at the time in her summer shorts and camisole with the port entrance and bandage visible, Walls 14:53:16. as a polite female with an infusion pump and port line internalized into her chest, defendant Walls knew she was not a threat and would not run on them. The officer's conduct of handcuffing the Plaintiff was objectively unreasonable, and would be seen so again at maintaining her cuffed detention even after a series of question on the property taken to Walls initial conversation with the lieutenant wherein he said to give them an information and report and let them go as Micah has a civil dispute as to ownership and criminal trespass is unavailable. Walls 15:31:13. Lieutenant Walls ignored his Lieutenant Chris Mitchell and continued to keep Plaintiff cuffed and outside in the heat despite her outcries which he called "paranoia" to the Lieutenant, until after Walls had thereafter gone through the interior with the owners and talked further to parties until finally Plaintiff demanded EMS help. Mejia uncuff Plaintiff as she went into the building for EMS ekg and blood pressure. Williams 15:30:25. Walls declined to go into the house while Plaintiff was rebandaging her port line, and dismissed his "show" as Mejia and Williams refer to him.

**Prayer**

For the foregoing reasons, Plaintiff respectfully requests the Court deny defendant's Motion to Dismiss and allow Plaintiff's valid claims to be heard, with leave to amend the First

Amended Complaint as the Court deems fair and just.

Dated: October 5, 2026

Respectfully submitted,

*/s/ Renee Walker*

Renee Walker, Esquire

Texas State Bar No. 16958480

LLG NATIONAL LAW GROUP

3003 N. Central Ave. Ste. 685

Phoenix, AZ 85012

Phone 602.690.9400

Renee.Walker@llgnational.com

**Certificate of Service**

I hereby certify that on October 5, 2026, I electronically filed the foregoing document with the Clerk of the Court through the ECF system and an email notice of the electronic filing was sent to all attorneys and parties of record.

*/s/ Renee Walker*

Renee Walker